IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBIN LEIGH HEATHERSTORM,

　　　　　Plaintiff,

　v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security[1]

　　　　　Defendant.

Case No. 16-cv-02196-MMC

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 23, 25

　　　Before the Court are: (1) plaintiff Robin Leigh Heatherstorm's ("Heatherstorm")

motion for summary judgment, filed September 23, 2016, by which Heatherstorm seeks

judicial review of a decision, issued June 12, 2015, by an administrative law judge

("ALJ"), denying her claim for Social Security benefits; and (2) defendant Acting

Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") cross-motion for

summary judgment, filed October 20, 2016.  Pursuant to Civil Local Rule 16-5, the

motions have been submitted on the papers without oral argument.  Having read and

considered the parties' respective written submissions, the Court rules as follows.

<div align="center">BACKGROUND</div>

　　　On September 26, 2012, Heatherstorm filed two applications, one for Social

Security disability insurance benefits and the other for Supplemental Security Income

benefits, each alleging disability beginning November 1, 2011, based on kidney and liver

cysts.  On March 22, 2013, the Social Security Administration ("SSA") denied the

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin.  See
Fed. R. Civ. P. 25(d).

applications and, on October 15, 2013, denied Heatherstorm's request for reconsideration. On December 9, 2013, Heatherstorm requested a hearing before an ALJ. On March 18, 2015, the ALJ conducted a hearing, at which time Heatherstorm testified, as did a vocational expert ("VE").

On June 12, 2015, the ALJ issued her decision, finding, based on the five-step sequential evaluation process set forth in the Code of Federal Regulations,[2] Heatherstorm was not disabled. At step one, the ALJ determined Heatherstorm had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found Heatherstorm had four "severe impairments," namely, "lumbar and cervical degenerative disc disease, polycystic kidney and liver disease, right shoulder bursitis, and depression" (see Certified Administrative Record ("CAR") 26); the ALJ also found Heatherstorm had "bilateral carpal tunnel syndrome (CTS)," but found such impairment was "not 'severe' within the meaning of the Regulations" (see id.). At step three, the ALJ determined Heatherstorm did not have an impairment or combination of impairments that met or equaled a listed impairment.

Before continuing to step four, the ALJ determined Heatherstorm's "residual functional capacity" ("RFC")[3] and, in that regard, found Heatherstorm could perform,

---

[2] "The ALJ performs a 'sequential evaluation process' which ends when the ALJ finds that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). At the first step, a claimant 'doing substantial gainful [work] activity' is not disabled. Id. § 416.920(a)(4)(i). At the second step, a claimant is not disabled unless she has a 'medically determinable physical or mental impairment' or combination of impairments that is severe and either lasts at least a year or results in death. Id. § 416.920(a)(4)(ii). At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner, 20 C.F.R. pt. 404, subpt. P, app. 1. Id. § 416.920(a)(4)(iii). At the fourth step, a claimant is not disabled if her residual functional capacity ('RFC') allows her to perform her past relevant work. Id. § 416.920(a)(4)(iv). At the fifth and final step, a claimant is disabled if she cannot make an adjustment to other work that 'exists in significant numbers in the national economy,' id. § [416.920(c)(2)], given her RFC, age, education, and work experience, id. § 416.920(a)(4)(v)." Gardner v. Berryhill, 856 F.3d 652, 654 n.1 (9th Cir. 2017).

[3] RFC is "the most [the claimant] can still do despite [her] limitations." See 20 C.F.R. § 416.945(a)(1); see also SSR 96-8p, 1996 WL 374184, at *1 (explaining "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule").

2

1    subject to certain limitations, "medium work as defined in 20 CFR [§§] 404.1567(c) and

2    416.967(b)."[4]  (See id. 27.)  At step four, the ALJ, relying on testimony provided by the

3    VE, found Heatherstorm was "unable to perform any past relevant work."  (See id. 33.)

4    Lastly, at step five, the ALJ, again relying on the VE's testimony, found that, in light of

5    Heatherstorm's "age, education, work experience, and residual functional capacity,"

6    Heatherstorm could perform the "medium, unskilled"[5] jobs of "automobile detailer,"

7    "laundry worker," and "cook helper" (see id. 34–35).  Based thereon, the ALJ denied

8    Heatherstorm's applications at the fifth step.

9         Subsequently, Heatherstorm requested the Appeals Council ("AC") review the

10   ALJ's decision and submitted new evidence, namely, medical records from March 2015

11   pertaining to her hands and back.  On February 25, 2016, the AC denied review,

12   explaining that it had considered both "the reasons [Heatherstorm] disagree[d] with the

13   [ALJ's] decision" and "the additional evidence" (see id. 2) and that "this information does

14   not provide a basis for changing the [ALJ's] decision" (see id.).

15        On April 22, 2016, Heatherstorm filed the instant petition for review.

16                              **STANDARD OF REVIEW**

17        "An ALJ's disability determination should be upheld unless it contains legal error or

18   is not supported by substantial evidence."  Garrison v. Colvin, 759 F.3d 995, 1009 (9th

19   Cir. 2014).  "Substantial evidence means more than a mere scintilla but less than a

20

21        [4] "Medium work involves lifting no more than 50 pounds at a time with frequent

22   lifting or carrying of objects weighing up to 25 pounds."  See 20 C.F.R. § 416.967(c).  "A
     full range of medium work requires standing or walking, off and on, for a total of

23   approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent
     lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur

24   intermittently during the remaining time.  Use of the arms and hands is necessary to
     grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work,

25   which require precision use of the fingers as well as use of the hands and arms."  SSR
     83-10, 1983 WL 31251, at *6.

26        [5] "Unskilled work is work which needs little or no judgment to do simple duties that

27   can be learned on the job in a short period of time. . . .  [A] person can usually learn to do
     the job in 30 days, and little specific vocational preparation and judgment are needed."

28   20 C.F.R. § 416.968(a).

                                          3

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  The reviewing court must consider "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," see id., and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," see id. at 1039–40.  Where the AC "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (internal quotation, citation, and alterations omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and . . . resolving ambiguities." Andrews, 53 F.3d at 1039.  Where the claimant "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, [the court] review[s] the ALJ's rejection of [the claimant's] testimony for specific, clear and convincing reasons." Burrell, 775 F.3d at 1136 (internal quotation and citation omitted).  The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." See Garrison, 759 F.3d at 1010.

"Even when the ALJ commits legal error," however, the reviewing court is to "uphold the decision where that error is harmless." See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation, citation, and alteration omitted).  "An error is harmless only if it is inconsequential to the ultimate nondisability determination" or, where the error is based on a lack of specificity, if "the agency's path may reasonably be discerned." See id. at 494 (internal quotation and citation omitted).

## DISCUSSION

In her motion for summary judgment, Heatherstorm contends the ALJ erred in assessing the evidence of record pertaining to her hands, depression, and back.  In

4

addition, she has attached to her motion a number of medical records, which records pertain primarily to her hands and which she contends constitute "new and material evidence requiring remand." (See Pl.'s Mot. for Summary Judgment ("MSJ") at 16:3.) The Court addresses each of the above-referenced issues in turn.

**A. Hand impairments**

As to her hands, Heatherstorm contends the ALJ erred in determining her RFC "by failing to consider all impairments." (See id. at 8:20.) In particular, Heatherstorm argues, the ALJ, both at step two and in her RFC discussion, failed to consider "the impact of [CTS] on her ability to work" (see id. 8:22; see also id. 9:9–10, 18–19), as well as "the combination of osteoarthritis and [CTS]" (see id. 8:22–23; see also id. 9:11–14). She also argues the ALJ erred at step two in finding her CTS to be "a non-severe impairment." (See id. 9:1–2.)[6]

**1. Step Two**

As noted, the ALJ, at step two, acknowledged Heatherstorm has bilateral CTS, but found it was "not 'severe.'" (See CAR 26.) The ALJ did not, at said step, mention any other hand-related impairments.

At step two, the ALJ considers "the medical severity of [the claimant's] impairment(s)." See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). "[I]f the ALJ concludes that the claimant does have a medically severe impairment, the ALJ proceeds to the next steps in the sequence." Id.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," 20

[6] Heatherstorm also asserts that the ALJ erred by "failing to determine whether right knee pain, post-traumatic stress disorder, and anxiety were severe impairments." (See Pl.'s MSJ at 6:3–4). As Heatherstorm does not present any argument in support of such assertion, the Court does not address it further herein.

United States District Court
Northern District of California

C.F.R. §§ 404.1521(a), 416.921(a) (each as effective through Mar. 26, 2017), which

activities include "[p]hysical functions such as . . . handling," <u>see</u> <u>id.</u> §§ 404.1521(b)(1),

416.921(b)(1).  A non-severity finding can be made "only if the evidence establishes a

slight abnormality that has no more than a minimal effect on an individual[']s ability to

work."  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation and

citation omitted); <u>see also Webb</u>, 433 F.3d at 687 (holding "an ALJ may find that a

claimant lacks a medically severe impairment . . . only when [the ALJ's] conclusion is

'clearly established by medical evidence'") (quoting SSR 85-28).[7]  An ALJ "is required to

consider the claimant's subjective symptoms, such as pain or fatigue, in determining

severity," <u>see</u> <u>Smolen</u>, 80 F.3d at 1290, and "must consider the combined effect of all of

the claimant's impairments on [the claimant's] ability to function, without regard to

whether each alone was sufficiently severe," <u>see</u> <u>id.</u>

   Here, the only hand impairment the ALJ considered at step two was CTS, which

she found non-severe on the basis that Heatherstorm had "a history of limited treatment

and normal objective findings."  (<u>See</u> CAR 26.).  As Heatherstorm points out, however,

she was also diagnosed with "[m]ild osteoarthritis" and "[p]eriarticular calcifications."

(<u>See</u> <u>id.</u> 532.)  Further, the record reflects numerous instances in which Heatherstorm

reported problems with her hands to health care providers and received treatment and/or

referrals.  (<u>See, e.g.</u>, <u>id.</u> 513, 515, 517, 519, 521, 523 (reports, dated Jan.–Apr. 2014, by

social worker) (noting Heatherstorm reported hand pain during six visits); <u>id.</u> 496–97

(report, dated Sept. 3, 2014, by nurse practitioner Fannette Downie-Allman ("Downie-

Allman")) (noting Heatherstorm reported "[h]ands are numb in the a.m.s" and diagnosing

CTS; prescribing wrist splints, ice, and exercises); <u>id.</u> 526–27 (Downie-Allman report,

Feb. 17, 2015) (noting Heatherstorm reported visit to emergency room on Feb. 8, 2015,

for "hand swelling and pain," which swelling "happened twice in 1 week"; referring

---

[7] "Social Security Rulings . . . are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1) (Jul. 3, 2007).

Heatherstorm for x-ray of both hands); id. 534–35 (Downie-Allman report, Mar. 9, 2015) (noting Heatherstorm's report of "[i]ntermittent hand swelling with associated numbness and tingling," finding "mod[erate] swelling bilat[eral] hands, . . . increased heat, slight limitation ROM [range of motion] fingers," recommending wrist splints, prescribing "Prednisone burst" and ibuprofen, and referring Heatherstorm to rheumatologist).[8]

Additionally, although the ALJ mentioned some of Heatherstorm's testimony as to the condition of her hands (see id. 26 (noting Heatherstorm had not used wrist splints, preferred to use copper gloves, and "had hand swelling with relief from Prednisone in the past")), at no point did the ALJ acknowledge Heatherstorm's testimony that she had been experiencing pain and swelling in her hands with increasing frequency and severity.[9] Heatherstorm testified, for example, the pain and swelling in her hands had "been going on and off for years" and that in "years past it only happened very rarely, like once or twice a year," but that "in [the] last year . . . it[] [had] been like 13 or 14 times," including three episodes "within a two-week period lately." (See id. 57–58 (further describing episodes as involving "horrible pain," starting with "a prickly electrical feeling" and building to swelling, rigidity, and "a real terrible burning sensation").)

Moreover, the ALJ did not address Heatherstorm's testimony that the pain and swelling in her hands affected her ability to use her hands. Heatherstorm testified, for example, that her hands "just totally don't move and work" during such episodes (see id. 58) and that, during the last episode, she had "almost no . . . mobility to close [her] hands

_____

[8] As noted, Heatherstorm submitted new evidence to the AC, including the above-referenced report dated March 9, 2015, and the AC stated it had considered such new evidence. Accordingly, the Court must consider that evidence as well. See Burrell, 775 F.3d at 1136.

[9] The Commissioner contends Heatherstorm may not rely on her own testimony because the ALJ "did not find [her] testimony credible." (See Def.'s MSJ at 3:27.) The Court is not persuaded. Although the ALJ did make an adverse credibility finding, which the Commissioner correctly notes Heatherstorm "does not challenge" (see id.), that finding did not address Heatherstorm's allegations regarding her hands (see CAR 28 (summarizing, in context of RFC analysis, allegations pertaining to Heatherstorm's "back pain" and "mental condition"; finding Heatherstorm's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible")).

to grip anything" (see id. 57). Asked if she could do "full-time work . . . putting little piece[s] together" (see id. 69–70), she testified, "[a]bsolutely not," explaining she has not had "small motor dexterity" for "[y]ears" (see id. 70). She also identified numerous activities that recently had become more difficult for her. (See, e.g., id. 65 (testifying to "more trouble with dressing nowadays," specifically, handling zippers and buttons, gripping booties and socks, and hooking bras); id. 73–74 (listing problems associated with "grip[ping] and handl[ing]," such as pain caused by holding drinking glass, shifting vehicle, flushing toilet, and cutting fabric; describing need to use both hands to hold glass and shift vehicle); id. at 74–75 (stating "fingering," such as writing, "runs a cramp in my hand if I do it for extended periods"; describing need to ice hands "[e]veryday for at least 20 minutes").

In light of the circumstances discussed above, the Court finds the ALJ's step-two analysis of Heatherstorm's hand impairments was inadequate. See Smolen, 80 F.3d at 1290 (finding error where ALJ "failed to consider how the combination of [claimant's] impairments affected [her] ability to do basic work activities" and "failed to consider her subjective symptoms in making the severity determination") (emphasis omitted).

As noted, however, the ALJ found Heatherstorm had other "severe" impairments (see CAR 26) and proceeded with the five-step sequential analysis. Consequently, even though the ALJ erred in analyzing Heatherstorm's alleged hand problems, such error, at the step-two juncture, was harmless. See Buck v. Berryhill, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (holding "[s]tep two is merely a threshold determination meant to screen out weak claims"; finding alleged error in step-two analysis harmless where "step two was decided in [claimant's] favor").[10] An ALJ's failure to consider evidence at step two nonetheless may result in reversible error at a later stage of the analysis. See, e.g.,

---

[10] But see Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (holding, where ALJ improperly found claimant's mental impairment non-severe, ALJ "committed reversible error" at step two, notwithstanding ALJ's finding other impairments met severity requirement).

Smolen, 80 F.3d at 1290 (holding ALJ, "[h]aving found [claimant] to suffer from only one 'severe' impairment at step two, . . . necessarily failed to consider at step five how the combination of her other impairments—and resulting [symptoms]—affected her residual functional capacity to perform work"; reversing denial of claim).

### 2. RFC finding

As noted, the ALJ found Heatherstorm could, subject to certain limitations, perform "medium work." (See CAR 27.) The ALJ did not, however, include in her RFC finding any limitations pertaining to Heatherstorm's hands and thus did not incorporate any such limitations when describing the hypothetical claimant to be considered by the VE.

Between steps three and four, an ALJ "assess[es]" the claimant's RFC, see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which, as noted, is "the most [the claimant] can still do despite [her] limitations," see 20 C.F.R. § 416.945(a)(1). "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are 'not severe,'" see SSR 96-8p, 1996 WL 374184, at *5, and "must consider subjective symptoms such as . . . pain," see Smolen, 80 F.3d at 1291. Subsequently, at step five,[11] an ALJ considers, inter alia, the claimant's RFC "to see if [the claimant] can make an adjustment to other work." See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the ALJ, in her RFC analysis, focused primarily on issues related to Heatherstorm's back and mental impairments. She did not include CTS, osteoarthritis, or hand issues in identifying Heatherstorm's physical problems (see CAR 28 (stating Heatherstorm "has a history of neck pain, lower back pain, right shoulder pain, and polycystic kidney and liver disease")), nor did the ALJ mention Heatherstorm's allegations or medical records concerning episodic hand pain and swelling, and, with one exception discussed below, made only passing reference to her hands (see id. 29 (in summarizing

---

[11] Step four, at which an ALJ also considers the claimant's RFC, for purposes of determining a claimant's ability to perform his/her past work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), is not at issue in the instant case.

Jan. 2013 clinic visit, noting, without further comment, "numbness and tingling in the bilateral fingertips")). Such omission constitutes error. See, e.g., Edlund, 253 F.3d at 1160 (finding ALJ erred when ALJ "failed to factor [claimant's] . . . impairments into . . . Step 5 analysis regarding [claimant's] residual capacity to perform other jobs"); Smolen, 80 F.3d at 1291 (requiring, in RFC assessment, consideration of "subjective symptoms").

The above-referenced exception pertains to the findings of Rose Lewis, M.D. ("Dr. Lewis"), a consultative examiner who conducted an "internal medicine" evaluation of Heatherstorm on February 15, 2013 (see CAR 439), and determined she was limited to "handling frequently, fingering frequently, and feeling frequently" (see id. 441).[12] The ALJ rejected Dr. Lewis's opinion, on the ground that such finding "lack[ed] support from treatment records and [was] inconsistent with her consultative examination." (See id. 32.) In particular, as characterized by the ALJ, Dr. Lewis found Heatherstorm had "normal motor strength and grip strength in the bilateral upper extremities" (see id.; see also id. 30); additionally, the ALJ described a February 2015 x-ray of Heatherstorm's hands as "identif[ying] only mild osteoarthritis" (see id. 32).

"The RFC assessment must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." See id. The issue, therefore, is whether the ALJ's explanation provided an adequate basis on which to reject the limitations Dr. Lewis identified.

Although it appears the ALJ accurately characterized Dr. Lewis's findings as to Heatherstorm's motor strength and grip strength (see CAR 441 (Lewis report) (finding Heatherstorm's "motor strength/muscle bulk and tone" to be "[p]resent and equal bilaterally in the upper and lower extremities and are 5/5 bilaterally"; further finding "grip strength is 5/5 bilaterally")), the ALJ did not explain how findings as to strength, bulk, and

---

[12] The SSA defines "frequent" as "occurring from one-third to two-thirds of the time." See SSR 83-10, 1983 WL 31251, at *6.

1    tone are inconsistent with the limitations Dr. Lewis identified, which limitations pertain to

2    frequency.  In addition, the ALJ mischaracterized the findings of the doctor who read the

3    February 2015 x-ray and identified not only "[m]ild osteoarthritis" but also multiple

4    "[p]eriarticular calcifications."  (See id. 532.)  Accordingly, the Court finds the ALJ erred in

5    her rejection of Dr. Lewis's opinion.

6         The Commissioner's contention that the ALJ, in considering "the evidence of

7    [Heatherstorm's] arthritis and hand limitations, . . . relied on opinions" from two

8    nonexamining physicians, G. Williams, M.D. ("Dr. Williams"), and B. Sheehy, M.D. ("Dr.

9    Sheehy") (see Def.'s MSJ at 2:23–24), and that such opinions "constituted substantial

10   evidence upon which the ALJ could rely" (see id. at 3:2–3), is not persuasive.  Although

11   both said physicians rated Heatherstorm as being "unlimited" with respect to handling,

12   fingering, and feeling (see CAR 105, 137), and although Dr. Williams further opined that

13   "there are no indications supporting hand/finger impairments" (see id. 101),[13] nothing in

14   the ALJ's decision suggests she relied on any of those opinions as to the condition of

15   Heatherstorm's hands.  See Garrison, 759 F.3d at 1010 (holding court "may not affirm the

16   ALJ on a ground upon which [ALJ] did not rely").  Notably, the ALJ did not mention either

17   physician's opinion regarding Heatherstorm's hands; she only stated she gave "some

18   weight to the assessments of State agency medical consultants" (see CAR 33), which

19   statement could encompass the assessments of any of four such consultants.[14]

20   Additionally, the opinions of Drs. Williams and Sheehy cannot, by themselves, be given

21   greater weight than the opinion of Dr. Lewis.  See Lester v. Chater, 81 F.3d 821, 830–31

22   (9th Cir. 1995) (holding "[t]he opinion of an examining physician is . . . entitled to greater

23

24        [13] Drs. Williams and Sheehy reviewed Heatherstorm's claims in 2013, before her
     2014 diagnosis of CTS.  (See CAR 106 (Williams opinion, dated Feb. 28, 2013); id. 138
25   (Sheehy opinion, dated Oct. 11, 2013); id. 496–97 (Downie-Allman diagnosis, dated
     Sept. 3, 2014).)  Said physicians' review also predates Heatherstorm's numerous reports,
26   beginning in January 2014, describing hand pain and swelling.  (See supra part A.1.)

27        [14] In addition to Drs. Williams and Sheehy, Uwe Jacobs, Ph.D., and V. Meenakshi,
     M.D., also served as nonexamining consultants.  (See id. 103, 108 (Jacobs opinion); id.
28   135, 140 (Meenakshi opinion).)

1 weight than the opinion of a nonexamining physician"; further holding "[t]he opinion of a

2 nonexamining physician cannot by itself constitute substantial evidence that justifies the

3 rejection of the opinion of . . . an examining physician").

4       Further, as discussed below, the ALJ's errors in determining Heatherstorm's RFC

5 were not harmless.

6       As noted, the ALJ, in finding Heatherstorm could perform other work, relied on the

7 VE's identification of three jobs in the "medium work" category, namely, "automobile

8 detailer," "laundry worker," and "cook helper." (See CAR 34–35.) "Medium work," as

9 noted, requires "[u]se of the arms and hands . . . to grasp, hold, and turn objects," see

10 SSR 83-10, 1983 WL 31251, at *6, and the VE testified that all of the above-referenced

11 jobs require "handling" at a "constant" or "frequent" level (see CAR 89–92 (defining, for

12 purposes of the work day, "constant" as being "a minimum . . . of five to six hours a day"

13 and "frequent" as being "up to two-thirds of the time" and "four to five hours, at least")).

14 The ALJ did not include any hand-related restrictions in her finding as to Heatherstorm's

15 RFC nor, at the hearing, did she include any such restrictions in the hypothetical

16 questions she posed to the VE. Heatherstorm's attorney, however, asked whether the

17 above-referenced jobs could be performed with "a limitation on handling" (see id. 89), in

18 response to which the VE, in turn, testified that, with a limitation to "frequent" handling,

19 the cook-helper job "would be eliminated" (see id.) and, with a limitation to "less than

20 constant handling" or to "frequent handling," all three jobs "could" be eliminated (see id.

21 91–92).

22       "Hypothetical questions posed to a [VE] must set out all the limitations and

23 restrictions of the particular claimant, including pain and an inability to engage in certain

24 activities[;] [i]f the assumptions in the hypothetical are not supported by the record, the

25 [VE's] opinion that a claimant is capable of working has no evidentiary value." Russell v.

26 Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (emphasis in original) (internal citation

27 omitted), departed from on other grounds in Sorenson v. Mink, 239 F.3d 1140 (9th Cir.

28 2001).

The Court cannot determine from the ALJ's decision what effect, if any, the ALJ's consideration of the hand-related conditions and problems discussed above might have had on her RFC finding.  See Brown-Hunter, 806 F.3d at 492 (holding "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless").  Moreover, there is no indication the VE considered those conditions and problems in identifying the jobs Heatherstorm could perform.  See Russell, 930 F.3d at 1445 (holding VE's opinion, based on hypothetical that omitted "significant limitations" on claimant's ability to perform certain activity, "had no evidentiary value").

In addition, as to Dr. Lewis's opinion, although Heatherstorm's attorney questioned the VE about limitations on "handling" (see CAR 89–92), it is unclear whether those questions covered fingering and feeling as well, thus leaving the scope of the VE's opinion unclear.  Lastly, even assuming an expansive reading of "handling," the VE's testimony that, with a restriction to "less than constant handling" or to "frequent" handling, all three jobs "could" be eliminated (see id. 91–92 (further estimating "probably a good third" of jobs would be eliminated)), is too equivocal to render the ALJ's errors in rejecting Dr. Lewis's opinion harmless.

Accordingly, the Court finds the ALJ erred in her assessment of Heatherstorm's RFC, and that such error was not harmless.

**B.    Depression**

As to her depression, Heatherstorm contends the ALJ erred, both at step three and in her RFC finding, "by failing to consider medical opinion evidence" (see Pl.'s MSJ at 12:9–10), namely, findings of "marked restrictions" (see id. 13:15; see also id. 13:20–21) by Robert Bilbrey, Ph.D. ("Dr. Bilbrey"), a consultative examiner who conducted a psychological evaluation of Heatherstorm.

In a report dated February 13, 2013, Dr. Bilbrey found Heatherstorm "would have marked difficulties" in three areas: (1) "concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or workweek"; (2)

"respond[ing] to changes in a routine work setting"; and (3) "conforming to a schedule, with regular and punctual attendance." (See CAR 437.)

Under the applicable regulations, medical opinions include "statements from . . . psychologists . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (both effective Aug. 24, 2012–Mar. 26, 2017). The SSA "evaluate[s] every medical opinion [it] receive[s]." See id. §§ 404.1527(c), 416.927(c). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [the ALJ] errs." Garrison, 759 F.3d at 1012.

### 1. Step Three

At step three, as at step two, the ALJ "considers the medical severity of [the claimant's] impairment," see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), in particular, whether the claimant has "an impairment(s) that meets or equals one of [the SSA's] listings in appendix 1 . . . and meets the duration requirement.," see id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).[15] Heatherstorm argues that, based on the above-referenced findings of "marked difficulties," she "meets the requirements of Listing 12.04." (See Pl.'s MSJ at 12:10.)[16]

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099 (emphasis omitted). Under Listing 12.04, which governs "[a]ffective [d]isorders," including depression, "[t]he required level of severity . . . is met when the requirements in

---

[15] "The Listing of Impairments . . . describes specific impairments of each of the major body systems 'which are considered severe enough to prevent a person from doing any gainful activity.'" See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1525).

[16] Heatherstorm does not contend her depression "equals" the requirements of Listing 12.04.

14

both [paragraphs] A and B are satisfied." See 20 C.F.R. pt. 404, subpt. P, app. 1 ("App. 1"), Listing 12.04 (Apr. 1, 2015) ("Listing 12.04").[17] The ALJ found Heatherstorm's depression did not meet the requirements of paragraph B.[18]

With respect to paragraph B, Heatherstorm must show her depression "result[ed] in at least two of the following": (1) "[m]arked restriction of activities of daily living" ("ADLs"); (2) "[m]arked difficulties in maintaining social functioning"; (3) "[m]arked difficulties in maintaining concentration, persistence, or pace" ("CPP"); (4) "[r]epeated episodes of decompensation, each of extended duration." See id. at ¶ B. Heatherstorm argues Dr. Bilbrey's findings satisfy the first and third of the above-referenced factors.

The ALJ found Heatherstorm had "mild restriction" with respect to the first factor, ADLs (see CAR 27) and "moderate difficulties" with respect to the third, maintaining CPP (see id.). Although the ALJ, in her step-three analysis, mentioned certain findings by Dr. Bilbrey (see id. (noting findings of "moderate difficulty interacting adequately with others," ability to "follow one- and two-part instructions and [do] simple tasks," and "some difficulty with complex tasks"); see also id. 437), the ALJ did not mention any of his findings of "marked" difficulties, which, as set forth above, concerned three separate areas. In disregarding those findings, and thus rejecting them without explanation, the ALJ erred. See Smolen, 80 F.3d at 1286 (holding ALJ erred in discussing only one portion of physician's opinions; finding ALJ "effectively rejected" undiscussed opinions "[b]y disregarding [them] and making contrary findings"); Edlund, 253 F.3d at 1159 (finding ALJ "selectively focused on aspects of [examining doctor's] report which tend to suggest non-disability").

---

[17] Heatherstorm does not contend her depression meets the requirements of Listing 12.04 pursuant to paragraph C, an alternative means of meeting said listing. See Listing 12.04 (providing "[t]he required level of severity . . . is met . . . when the requirements in [paragraph] C are satisfied").

[18] In light of the Court's conclusion as to paragraph B, see discussion infra, the Court does not reach Heatherstorm's contention that the ALJ "impliedly accepted" her showing as to paragraph A. (See Pl.'s MSJ at 12:24.)

Such error, however, was harmless, as the findings by Dr. Bilbrey on which Heatherstorm relies satisfy only one, not two, of the paragraph B factors. Specifically, Dr. Bilbrey's finding of "marked difficulties concentrating or persisting independently at work-related activities at a consistent pace" (see CAR 437) satisfies the CPP factor but, contrary to Heatherstorm's contention, his findings of "marked difficulties" concerning "changes in a routine work setting" and "conforming to a schedule, with regular and punctual attendance" (see id.) do not satisfy the ADL factor. In particular, for "mental disorders," such as Listing 12.04, ADLs "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." See App. 1, Listing 12.00 ¶¶ A, C.1. Although the above-quoted list of ADLs is not intended to be exclusive, there is no indication, and Heatherstorm has identified no authority showing, that the term is intended to cover activities substantially different from the examples given. Here, the restrictions at issue are commonly associated with the work world, not the more basic and flexible activities of day-to-day living.

### 2. RFC Finding

In assessing Heatherstorm's RFC, the ALJ discussed Dr. Bilbrey's opinion in some detail, citing several of his findings and giving the opinion as a whole "partial weight." (See CAR 32; see also id. 29–30.) With regard to the above-referenced three findings, however, the ALJ did no more than note that Dr. Bilbrey "found that the claimant would have marked difficulty conforming to a schedule but also predicted improvement with treatment." (See id. 32.)

As at step three, the ALJ erred in disregarding Dr. Bilbrey's findings concerning Heatherstorm's ability to respond to changes in a routine work setting and to maintain CPP. See Smolen, 80 F.3d at 1286; see also Edlund, 253 F.3d at 1159. Additionally, the ALJ's passing reference to Dr. Bilbrey's finding with respect to Heatherstorm's ability to conform to a schedule is inadequate for purposes of discounting that finding, particularly

where Dr. Bilbrey made only a general statement as to the prospect of improvement in Heatherstorm's mental health symptoms and provided no estimation of the degree to which any such symptoms might improve.  <u>See</u> CAR 437 (opining Heatherstorm "should resume mental health treatment and her psychological symptoms would be expected to improve within a year").[19]

Moreover, such error was not harmless, as the restrictions at issue address the critical question of Heatherstorm's ability to work.  The only restrictions related to mental ability the ALJ included in her RFC finding were a limitation to "simple, repetitive tasks" (<u>see</u> CAR 27) and a limitation to "occasional contact with supervisors and the public" (<u>see</u> <u>id.</u>).  Such limitations do not account for the restrictions Dr. Bilbrey identified with respect to Heatherstorm's ability to respond to changes in a routine work setting and conform to a schedule with regular and punctual attendance.  Further, the ALJ's finding Heatherstorm had "moderate difficulties" with respect to CPP (<u>see</u> <u>id.</u> 27) conflicts directly with Dr. Bilbrey's corresponding finding of "marked difficulties" (<u>see</u> <u>id.</u> 437), which finding might undermine the ALJ's determination that Heatherstorm was capable of simple, repetitive tasks.  Moreover, as the ALJ did not incorporate, either in her RFC finding or in the hypotheticals she gave to the VE, the limitations specified by Dr. Bilbrey, there is no indication the VE considered them in identifying the jobs Heatherstorm could perform. <u>See</u> <u>Russell</u>, 930 F.2d at 1445.

Accordingly, the Court finds the ALJ erred in not including the limitations Dr. Bilbrey identified, and that such error was not harmless.

**C.    Degenerative Disc Disease**

Heatherstorm argues the ALJ erred in determining her RFC because, according to Heatherstorm, the ALJ "fail[ed] to properly assess objective findings of degenerative disc

---

[19] The Commissioner's contention that the ALJ "did not assign significant weight to Dr. Bilbrey's conclusions because they were inconsistent with his own findings" (<u>see</u> Def.'s MSJ at 4:13–14) fails, as the ALJ made no such determination.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1010.

disease." (See Pl.'s MSJ at 14:22–23.)  In particular, Heatherstorm contends the ALJ, in

finding the record "contains only mild objective findings of degenerative disc disease"

(see id. 15:4 (quoting CAR 33)), "ignor[ed] the medical evidence" (see id. 15:5), namely,

a CT scan dated August 5, 2011, and an x-ray of her lumbar spine dated September 8,

2014.

Pursuant to its regulations, the SSA "consider[s] all evidence in [the claimant's]

case record when [it] make[s] a determination or decision whether [the claimant is]

disabled." See 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  The SSA "may not reject

significant probative evidence without explanation." See Flores v. Shalala, 49 F.3d 562,

571 (9th Cir. 1995).

Here, although the ALJ, in summarizing Heatherstorm's medical history,

mentioned the above-referenced CT scan (see CAR 29 (referring to "[a] renal stone

study") and x-ray (see id. 31 (referring to "[a]n x-ray identif[ying] multilevel degenerative

disc and facet changes")), she did not acknowledge, much less discuss, the findings

therein as to "moderate" spinal changes (see id. 362 (CT scan report) (finding "[m]ild-to-

moderate degenerative changes are demonstrated in the spine"; noting "[t]hese

[changes] are most pronounced at L4–L5 where there is moderate disc narrowing"); id.

477 (x-ray report) (finding "[d]isc space narrowing is moderate at L4–5" and "[f]acet

hypertrophy is moderate at L4–5 and L5–S1")).  Such evidence, which would appear to

be both "significant" and "probative," see Flores, 49 F.3d at 571, conflicts with the ALJ's

determination that the record contains "only mild objective findings of degenerative disc

disease" (see CAR 33).  Accordingly, the Court finds the ALJ erred in rejecting the

evidence without explanation. See Flores, 49 F.3d at 571.[20]

The ALJ's failure to address the findings of "moderate" spinal changes also

_____

[20] The Commissioner's argument that, with respect to the CT scan, the ALJ
"properly deferred" to the "expert opinions" of Drs. Williams and Sheehy (see Def.'s MSJ
at 5:24) is not persuasive.  Nothing in the ALJ's decision suggests she relied on any such
"opinion," and, indeed, the record contains no more than brief summaries of the CT scan
results.  (See CAR 133.)

United States District Court
Northern District of California

undermines the ALJ's determination of Heatherstorm's RFC.  The ALJ concluded

Heatherstorm could perform "medium work" (see CAR 27), finding she could: (1) "lift

and/or carry 50 pounds occasionally and 25 pounds frequently" (see id.);[21] (2) "sit, stand,

and walk for six hours each in an eight-hour workday" (see id.); (3) "occasionally climb

ladders, ropes, and scaffolds and frequently climb ramps and stairs" (see id.); and "(4)

occasionally reach overhead with the right upper extremity" (see id.).  In the absence of

even an acknowledgment of the above-discussed "moderate" changes, the Court cannot

determine what effect, if any, the ALJ's consideration thereof might have had on her

finding as to Heatherstorm's RFC, see Brown-Hunter, 806 F.3d at 492, nor is there any

indication the VE considered such changes in identifying the jobs Heatherstorm could

perform, see Russell, 930 F.2d at 1445.

Accordingly, the Court finds the ALJ erred in disregarding findings of moderate

changes in Heatherstorm's spine, and that such error was not harmless.

**D.    New Evidence**

Heatherstorm argues, in the alternative, that the instant case should be remanded

for consideration of new evidence regarding her problems with her hands.  In that regard,

she has attached to her motion four exhibits, which she contends provide "objective

evidence confirming [her] allegations of pain and the episodic nature of her hand swelling

and pain" (see Pl.'s MSJ at 19:4–6), as well as new diagnoses "for the painful conditions

of her hands that had existed for many years" (see id. at 16:5–6).

A district court may remand "upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the

record in a prior proceeding."  42 U.S.C. § 405(g).  To satisfy the materiality requirement,

the claimant must show the new evidence "bear[s] directly and substantially on the matter

in dispute," see Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (internal quotation

---

[21] The SSA defines "occasionally" as "occurring from very little up to one-third of the time," see SSR 83-10, 1983 WL 31251, at *5, and, as noted above, defines "frequent" as "occurring from one-third to two-thirds of the time," see id. at *6.

and citation omitted), and that there is "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing," see id. (internal quotation and citation omitted). To satisfy the good cause requirement, the claimant must show the new evidence "surface[d] after the [SSA's] final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding." See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).

The new exhibits here at issue are: (1) a "Preliminary Report," dated February 4, 2016, by Neal S. Birnbaum, M.D. ("Dr. Birnbaum"), a rheumatologist (see Pl.'s MSJ, Ex. 1 at 1); (2) an "electrodiagnostic study," dated August 9, 2016, by Donald Iverson, M.D. ("Dr. Iverson") (see id., Ex. 2 at 1); (3) treatment records, dated May 24, May 25, and August 17, 2016, for three visits Heatherstorm made to Downie-Allman, her primary care provider (see id., Ex. 3); and (4) an x-ray report, dated July 25, 2016 (see id., Ex. 4 at 1).

Although the Commissioner does not dispute that the above-referenced exhibits constitute new evidence, she contends Heatherstorm has not shown said evidence, all bearing dates in 2016, "relate[s] to her earlier condition" (see Def.'s MSJ at 7:8), namely, her "condition . . . before the Commissioner's final decision" (see id. at 6:24–25),[22] and, thus, that Heatherstorm has not shown the evidence is material. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511 (9th Cir. 1987) (assessing materiality of claimant's new evidence based on whether such evidence was "probative of [claimant's] condition as it existed at the relevant time—at or before the disability hearing").

In light of the Court's conclusion that the ALJ erred in denying Heatherstorm's applications, the Court need not decide whether the above-referenced exhibits independently warrant remand. Nevertheless, as discussed below, the Court notes that the proffered evidence, contrary to the Commissioner's contention, appears to relate to the condition of Heatherstorm's hands at the time of the hearing, and, as the case will, in

---

[22] The final decision in the instant case is the ALJ's decision in June 2015. See Burton v. Heckler, 724 F.2d 1415, 1416 (9th Cir. 1984) (holding "[t]he ALJ's decision became the final decision of the [agency] when the Appeals Council approved it").

any event, be remanded, the issue of Heatherstorm's hand problems will be before the ALJ again. Under such circumstances, the Court finds it appropriate that the ALJ have and consider this additional evidence as well.

As discussed in detail earlier herein, Heatherstorm, at the hearing, testified extensively about pain and swelling in her hands; additionally, numerous medical records submitted to the ALJ refer to problems with Heatherstorm's hands. See supra part A.1. Further, Heatherstorm testified that, due to hand pain and swelling, Downie-Allman, at a visit the week before the hearing, had "referred [her] to a rheumatologist" (see CAR 57), that it would "be a while before they [could] get [her] in to see them" (see id.), and that both Downie-Allman and the doctor she had seen at the emergency room said her condition "acts like rheumatoid arthritis" (see id.).

Notably, each of the new documents reflects treatment or testing pertaining specifically to Heatherstorm's episodic problems with hand pain and swelling. (See Ex. 1 at 1–2 (Birnbaum report) (noting Heatherstorm "dated the onset of symptoms to about 6 years ago"; opining her "history of episodic joint swelling . . . is consistent with 'palindromic rheumatism'"); Ex. 2 at 1 (Iverson report) (opining "[n]erve conduction studies ["NCS"] of the upper extremities show moderate to severe demyelinating polyneuropathy"); Ex. 3 at 1–2 (Downie-Allman record, May 24, 2016) (noting palindromic rheumatism diagnosis and Heatherstorm's report that "[h]ands continue to be very painful," with "intermittent episode of swelling"; providing referral for "bilateral upper extremity NCS"); id. at 3–4 (Downie-Allman record, May 25, 2016) (noting "[s]evere edema bilateral hands and fingers," "hot to touch," "[v]ery limited ROM [range of motion] of fingers," and "skin . . . cracking at the finger webs"; ordering x-rays "for both hands"); id. at 5–6 (Downie-Allman record, Aug. 17, 2016) (noting x-ray finding of osteoarthritis, NCS finding of demyelinating polyneuropathy, and Heatherstorm's report of "continue[d]" hand pain, "episodic swelling," "loss of strength," and "inability to pick up objects"; referring Heatherstorm back to Dr. Iverson for "neurological evaluation"); Ex. 4 at 1 (x-ray report) (finding "skeletal structures are borderline osteopenic"; concluding finding is

"consistent with osteoarthritis of the hands, slightly progressive since the prior study").

Given the span of time over which Heatherstorm's condition reportedly persisted, such new evidence sheds light on Heatherstorm's likely condition at the time of the ALJ's decision and, thus, "bear[s] directly and substantially on the matter in dispute." See Mayes, 276 F.3d at 462; see also Wainwright v. Sec'y of Health & Human Servs., 939 F.2d 680, 683 (9th Cir. 1991) (finding new test "relevant to [claimant's] condition at the time of her hearing," where physician stated abnormality found thereby "may well have been there earlier").

Further, there is a "reasonable possibility" the new evidence "would have changed the outcome of the administrative hearing." See Mayes, 276 F.3d at 462; see also Wainwright, 939 F.3d at 683 (holding new test "has a reasonable possibility of changing the ALJ's determination," where test "may provide a medical basis for [claimant's] allegations"). As discussed above, see supra part A., the ALJ, both at step two and in her RFC finding, made several errors in her consideration of Heatherstorm's hand problems, and it does not appear the ALJ accorded those problems any real significance. As a result, the ALJ did not include any hand-related limitations in her RFC finding or in the hypotheticals she gave to the VE, who, in turn, identified jobs that, in each instance, require frequent or constant handling.

Accordingly, the Court finds Heatherstorm's new evidence is material to her claims.

**E.      Remedy**

Heatherstorm requests the case be remanded for an award of benefits or, in the alternative, for further proceedings.

"A remand for an immediate award of benefits is appropriate . . . only in rare circumstances," see Brown-Hunter, 806 F.3d at 495 (internal quotation and citation omitted), namely, where the following three "requirements" are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," see Garrison, 759 F.3d at 1020. Even if such requirements are met, however, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the reviewing court's] discretion." See Treichler v. Commissioner, 775 F.3d 1090, 1101–02 (9th Cir. 2014) (internal quotation and citation omitted).

As the Commissioner points out, Heatherstorm has not articulated any reason why a remand for an award of benefits would be appropriate, and, under all of the circumstances discussed above, the Court finds it appropriate to remand for further proceedings.[23]

## CONCLUSION

For the reasons stated above, Heatherstorm's motion for summary judgment is hereby GRANTED, the Commissioner's cross-motion for summary judgment is hereby DENIED, and the action is hereby REMANDED, under sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: October 17, 2017

MAXINE M. CHESNEY
United States District Judge

---

[23] Indeed, in her reply, Heatherstorm requests only a "remand for further proceedings." (See Pl.'s Reply at 7:7.)